IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| STEVEN RAY COOPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:11cv134-WC |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Plaintiff, Steven Ray Cooper, applied for supplemental security income benefits under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381 *et seq*. His application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which he found Plaintiff not disabled from February 19, 2008, the application date, to the date of the decision. Tr. 33. The Appeals Council rejected Plaintiff's request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. #15); Def.'s Consent to Jurisdiction (Doc. #14). Based on the Court's review of the record and the briefs of the parties, the Court REVERSES the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

>answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was thirty-four years old at the time of the hearing before the ALJ. Tr. 64, 152. Plaintiff received special education classes, Tr. 66, 186, and has a tenth grade education. Tr. 65, 186. Plaintiff's past relevant work experience was as a roustabout and brake repairer. Tr. 91, 183, 220. Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 19, 2008, the application date (Step 1). Tr. 16. At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments: "Facet arthropathy, Grade I spondylosis, mild degenerative changes at L3-4, depression, borderline intellectual functioning, and status post closed head injury." Tr. 16. The ALJ then found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . ." (Step 3) Tr. 17. Next, the ALJ found that Plaintiff

> has the residual functional capacity to perform the exertional demands of light work . . . with the following non-exertional limitations. He can frequently use his hands for repetitive action such as in simple grasping, occasionally use his hands for repetitive action such as in the pushing and pulling of arm controls, and continuously use his hands for repetitive action such as for fine manipulation. He can occasionally use his feet for repetitive movement such as in the pushing and pulling of leg controls. He can frequently climb stairs and ramps and balance. He can occasionally stoop, kneel, crouch, or crawl and frequently reach overhead. He can never work around unprotected heights; frequently work around moving machinery, drive automotive equipment, and exposure to dust, fumes, and gases; and occasionally work around exposure to marked changes in temperature and humidity. He experiences a moderate degree of pain. He has a moderate limitation in his ability to respond appropriately to supervisors. He has a moderate limitation in his ability to respond appropriately to co-workers. He has a moderate limitation in his

> ability to respond appropriately to customers or other members of the general public. He has a moderate limitation in his ability to use judgment in simple one or two step work related decisions. He has a marked limitation in his ability to use judgment in detailed or complex work-related decisions. He has a moderate limitation in his ability to deal with changes in a routine work setting. He has a moderate limitation in his ability to understand, remember, and carry out simple, one and two step instructions. He has a marked limitation in his ability to understand, remember, and carry out detailed or complex instructions. He has a moderate limitation in his ability to maintain attention, concentration or pace for periods of at least two hours. He has a mild limitation in his ability to maintain social functioning. He has a moderate limitation his ability to maintain activities of daily living. He has no episodes of decompensation, each of extended duration.

Tr. 20. After consulting with a VE, the ALJ found Plaintiff "is unable to perform any past relevant work." (Step 4) Tr. 31. Considering Plaintiff's "age, education, work experience, and [RFC]," and after consulting the VE, the ALJ determined that "there are jobs that exist in significant numbers in the national economy" that Plaintiff can perform, including: "Sorter I," "Ticketer/Tagger," "Cloth Folder," "Acetone Button Paster," "Button Reclaimer," "Hander In." (Step 5) Tr. 32-33. Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . since February 19, 2008, the date the application was filed." Tr. 33.

## IV. PLAINTIFF'S CLAIMS

Plaintiff presents four issues for this Court's consideration in review of the ALJ's decision: (1) whether "the ALJ erred by improperly acting as both Judge and medical professional[;]" (2) whether "the Appeals Council erroneously denied [Plaintiff's] request for review in light of the material objective evidence findings submitted thereto[;]" (3)

whether "the ALJ failed to properly evaluate the effects and resulting limitations of [Plaintiff's] medication side effects[;]" and (4) whether "the ALJ did not properly evaluate [Plaintiff's] mental allegations." Pl.'s Brief (Doc. #10) at 4.  The Court finds that the new evidence submitted to the Appeals Council, but not considered by the ALJ, warrants remand. Because the Court is unable to review the ALJ's decision without his consideration of the new evidence, the Court declines consideration of the other issues raised by Plaintiff.

## V. DISCUSSION

### A. Plaintiff's submission of new evidence.

Plaintiff argues that "the Appeals Council erroneously denied [Plaintiff's] request for review in light of the material objective evidence findings submitted thereto." Pl.'s Brief (Doc. #10) at 8.  Plaintiff essentially argues that the evidence presented to the Appeals Council, but not the ALJ, renders the ALJ's decision to deny benefits unsupported by substantial evidence and that the Appeals Council erred in denying review.  Defendant maintains that the additional evidence presented to the Appeals Council did not significantly undermine the ALJ's decision and that reversal on the basis of the new evidence is unwarranted because:  1) "the new evidence did not pertain to the time period considered by the ALJ"; 2) "the new evidence did not show a significant deterioration of Plaintiff's condition"; and 3) "the new evidence is not relevant because it did not clearly show that the ALJ's residual functional capacity assessment was unreasonable." Def.'s Brief (Doc. #12) at 11-12.  The Court disagrees.

Plaintiff challenges both the ALJ's decision to deny him benefits and the Appeals Council's decision to deny review on the basis of the new evidence. Under *Ingram*, "when a claimant properly presents new evidence to the Appeals Council [and the Appeals Council denies review], a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram v. Comm'r of Social Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). *Ingram* held that "the denial of a request for review by the Appeals Council is part of the 'final decision' of the Commissioner." *Id.* at 1263. As to Plaintiff's second challenge, when reviewing the Appeals Council's denial of review, the Court must "look at the pertinent evidence to determine if the evidence is new and material." *Robinson v. Astrue*, 365 F. App'x 993, 996 (11th Cir. 2010) (quoting *Falge v. Apfel,* 150 F.3d 1320, 1324 (11th Cir. 1998)). "'New' evidence is evidence that is non-cumulative, and 'material' evidence is evidence that is 'relevant and probative so that there is a reasonable possibility that it would change the administrative result.'" *Id*. (quoting *Milano v. Bowen,* 809 F.2d 763, 766 (11th Cir. 1987)). Upon review of the record and the evidence submitted to the Appeals Council, the Court finds that Plaintiff satisfies both standards. The Court addresses the Appeals Council's denial of review first.

Plaintiff underwent an MRI on March 8, 2010, approximately two months after the ALJ rendered his decision. Tr. 387. The MRI was submitted to the Appeals Council on June 18, 2010. The Appeals Council considered the evidence before it denied review on January

8

28, 2011. Tr. 1-2.[5] The MRI is non-cumulative new evidence because it is the only MRI on the record and it shows changes to Plaintiff's condition when compared to the x-rays the ALJ had before him during the administrative proceedings.[6] The 2010 MRI indicated the following:

> Multi-planar, multi-echo images obtained without contrast.
>
> There is mild anterolisthesis of L3 relative to L4 approximately 6mm. There is associated disc space narrowing at this level. There is also disc space narrowing at L1-2. There is desiccation of the disc at L1-2, L3-4 and L4-5. Small Schmorl's nodes are noted at L1-2. The conus medullaris lies at L1.
>
> The disc at L1-2 shows mild diffuse protrusion and there is hypertrophic change of the facet joints with moderate neural foraminal impingement. The disc at L2-3 is intact and there is moderate hypertrophic change of the facet joints and neural foramina are patent. **The disc at L3-4 shows diffuse protrusion with marked hypertrophic change of the facet joints and there is severe neural foraminal stenosis bilaterally**. The disc at L4-5 shows mild posterior protrusion eccentric to the right and there is hypertrophic change of the facet joints with moderate neural foraminal stenosis. The disc at L5-S1 is intact. There is hypertrophic change of the facet joints and neural foramina are patent.

---

[5] The Appeals Council indicated that "[i]n looking at [Plaintiff's] case, [it] considered . . . the additional evidence. [It] found that this information does not provide a basis for changing the [ALJ's] decision." Tr. 1-2.

[6] During the administrative proceedings, the medical evidence of record contained only x-rays indicating:

> "Slight scoliosis and multilevel degenerative changes." Tr. 291, x-ray dated June 23, 2009;
>
> "Grade I spondylolisthesis with chronic spondylolysis of L3 on L4" and "mild discogenic degenerative change at L3-4," Tr. 336, x-ray dated July 09, 2009;
>
> "There is slight scoliosis. There are five lumbar type vertebrae. There are only minor multilevel degenerative changes. There is a minor grade I anterolisthesis of L3 upon L4. There are minor old compression fractures at the T12 and L1 levels." Tr. 384, x-ray dated October 20, 2009.

Tr. 387 (emphasis added). Dr. Turner's medical impression of the MRI indicated "multilevel degenerative disc disease with disc protrusions, facet arthrosis and neural foraminal stenosis." *Id.* Thus, the new information in the 2010 MRI, which reveals "diffuse protrusion with **marked** hypertrophic change" and "**severe** neural foraminal stenosis," is significantly different from previous x-rays that revealed only minor abnormalities, such as "**slight** scoliosis" and "**minor** multilevel degenerative changes."

The Court now turns to the materiality of the new evidence. The Court finds that the evidence is relevant and probative in that it pertains to a condition that Plaintiff listed in his application at the administrative level as a source of his disability.[7] The evidence also confirms a medical opinion on the severity of the impairment during the time period for which benefits are sought.[8] Indeed, Plaintiff did not develop back problems overnight. The ALJ gave "controlling weight" to Dr. Hakim's medical opinion and gave "little weight" to the opinion of Dr. Bartel, indicating that Dr. Bartel's "reports fail to reveal the type of **significant clinical and laboratory abnormalities** one would expect if the claimant were in fact disabled" and "[h]is opinion is not supported by clinical evidence." Tr. 30 (emphasis added). The new evidence, however, provides objective support for Dr. Bartel's medical

---

[7] In his application and related documentation, as well as during the hearing, Plaintiff alleged disability due to his back problems. Tr. 21, 69, 83, 272.

[8] For example, on October 20, 2009, Dr. Bartel completed a clinical assessment of pain "indicating that pain was present to such an extent as to be distracting to adequate performance of daily activities; physical activity greatly increased the pain to such a degree as to cause distraction from task or total abandonment of task; and drug side effects could be expected to be severe and limit effectiveness due to distraction, inattention, drowsiness, etc." Tr. 27; 374.

assessment of Plaintiff's level of pain and limitations.

Additionally, there is a reasonable possibility that the new evidence would change the administrative outcome because it consists of medical evidence that relates directly to one of Plaintiff's principal alleged impairments, about which there was inadequate evidence presented to the ALJ. In this case, the new evidence could reasonably be expected to influence the ALJ's finding regarding Plaintiff's RFC. The ALJ's opinion expresses a concern that

> [Plaintiff's] testimony of disabling pain and functional restrictions is disproportionate to the objective medical evidence. The record does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations alleged. There are no diagnostic studies to show abnormalities that could be expected to produce such severe symptoms. The physical findings in the record do not establish the existence of neurological deficits, significant weight loss, muscle atrophy, or other observable signs often indicative of protracted pain of the intensity, frequency, and severity alleged.

Tr. 29. Plaintiff's 2010 MRI scan provides the precise sort of "objective medical evidence" identified by the ALJ as lacking in the record before him. Additionally, had the ALJ been confronted with the sort of "objective medical evidence" provided by the 2010 MRI, as well as corresponding medical opinion evidence in light of the MRI, perhaps the ALJ would have reassessed his credibility findings with respect to Plaintiff's testimony regarding his pain and his limitations. *See Hyde v. Bowen,* 823 F.2d 456, 459 (11th Cir. 1987) (finding that new evidence is "material" when it offers an objective medical explanation for previously unexplained subjective complaints of pain and inability to work). For example, Plaintiff indicated that "he has problems concentrating/remembering every so often which is usually

due to back pain." Tr. 289. As Plaintiff argues, the "multi-level disc protrusions, including a diffuse protrusion at L3-4 with marked hypertrophic change of the facet joints and severe neural foraminal stenosis bilaterally, could reasonably be expected to produce the degree and intensity of pain and limitation as testified to by [Plaintiff]." Pl.'s Brief (Doc. #10) at 10. Indeed, during the hearing, the VE indicated that if Plaintiff's testimony were found to be fully credible, he would not be able to perform any past relevant work nor would he be able to perform other work in the national economy. Tr. 92-93.[9]

The Court turns now to Plaintiff's challenge of the ALJ's denial of benefits. Plaintiff argues that the new evidence "renders the ALJ's denial of benefits erroneous." Pl.'s Brief (Doc. #10) at 9. Plaintiff notes that in "arriving at his physical RFC findings[,] the ALJ assigned 'controlling weight to Dr. Hakim's assessment' (Tr. 30)," but "Dr. Hakim's assessment was based upon his review of an x-ray in which he noted revealed 'minor grade

---

[9] The following exchange took place between the ALJ and the VE:
> Q: All right. Please assume that I find fully credible the claimant's testimony at this hearing. First, do have an opinion whether he could perform any of the past relevant work you identified as he performed them?
> A: I have an opinion and I do not believe that he could.
> Q: Why?
> A: He indicates that he has a seven or above level of pain at least three to four hours a day.
> Q: Do you have an opinion whether he could perform any of the past relevant work as general performed in the national economy?
> A: I do not believe that he could.
> Q: Same reason?
> A: Yes, sir.
> Q: Do you have an opinion whether he could perform other work existing in the regional economy?
> A: I do not believe that he could.
> Q: Same reason?
> A: Yes, sir.

Tr. 92-93.

I anterolisthesis of L3 upon L4.  There is only minor multilevel degenerative changes' (Tr. 292)." Pl.'s Brief (Doc. #10) at 9.  Plaintiff argues that the new MRI "reveals that [Plaintiff] suffers from far greater **objective** abnormalities than Dr. Hakim thought." *Id*. (emphasis in original).  Consequently, Plaintiff contends that "[t]he Commissioner's denial of benefits herein should not be based upon Dr. Hakim's assessment, which was based upon an x-ray which he interpreted to evidence only *minor* abnormalities when a later MRI reveals *significant* multi-level degenerative disc disease with disc protrusions, facet arthrosis and neural foraminal stenosis." *Id*. (emphasis in original).[10]  The Court agrees with Plaintiff and rejects Defendant's argument that "the new evidence did not show a significant deterioration of Plaintiff's condition."  Def.'s Brief (Doc. #12) at 11.  The 2010 MRI clearly reveals significant changes in Plaintiff's condition from the time the 2009 x-rays were performed.  The Court finds Defendant's argument that "the March 2010 MRI . . . was essentially the same finding as in June 2009, when x-rays revealed slight scoliosis and multilevel degenerative changes (Tr. 301)," Def.'s Brief (Doc. #12) at 11, is unpersuasive.

      The Court notes that even though the ALJ posed hypotheticals to the VE limiting Plaintiff to sedentary work, the hypotheticals posed to the VE were not based on an accurate RFC since the ALJ's opinion relies on medical evidence that does not accurately present the severity of Plaintiff's condition and calls into doubt Plaintiff's testimony.[11]

---

[10] The ALJ noted that "X-rays of [Plaintiff's] lumbar spine revealed slight scoliosis and minor grade I anterolisthesis of L3 upon L4.  There are only minor multilevel degenerative changes."  Tr. 26.

[11] The Court also notes that when asked whether her responses would change if the hypothetical individual experienced "moderately severe degree of pain" lasting "three to

Thus, for the reasons stated above, the Court finds that remand is warranted in this case. While the Court does not make a finding regarding what, if any, effect consideration of the 2010 MRI may have on the ultimate determination of disability, the evidence must be considered in the Commissioner's examination of the totality of the evidence.

## VI.   CONCLUSION

The Court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is REVERSED and this case is REMANDED to the Commissioner for proceedings consistent with this decision. A separate judgment will issue.

Done this 6th day of February, 2012.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

---

four hours daily," the VE indicated "that would take that individual out of competitive employment."  Tr. 96-97.